***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties necessary to the determination of this matter are properly before the Industrial Commission.
2. The Industrial Commission has jurisdiction of this matter.
3. The parties are subject to the North Carolina Workers' Compensation Act.
4. The employer-employee relationship existed between defendant-employer and plaintiff.
5. The carrier liable on the risk is correctly named.
6. The parties are correctly designated.
7. The alleged date of injury is April 30, 2004.
8. The average weekly wage of plaintiff is $457.77.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Plaintiff's personnel file
 • Exhibit 4: Plaintiff's medical records
The following document was accepted into evidence as a plaintiff's exhibit:
 • Exhibit 1: Plaintiff's resume
The following documents were accepted into evidence as defendants' exhibits:
 • Exhibit 1: plaintiff's discovery responses
 • Exhibit 2: ESC decision regarding Michael Shepherd
Transcripts of the depositions of the following were also received post-hearing: *Page 3 
 • Brad Batchelor, D.C. (with Exhibits 1, 1a, 1b, 1c 1e)
 • Dr. M. Barry Ellis (with Exhibit 1)
 • Dr. Dale Menard (with Exhibits 1-3)
 • Dr. Mark L. Moody (with Exhibit 1)
 • Dr. James Martin McLean (with Exhibit 1)
 • Dr. German Levin (with Exhibit 1)
 • Nannette Davis (with Exhibits 1, 2 4)
 *********** ISSUES
1. Whether plaintiff sustained a compensable injury by accident or specific traumatic incident on April 30, 2004?
2. Whether plaintiff's claim is barred under the provisions of N.C. Gen. Stat. § 97-22?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Prior to coming to work with defendant, plaintiff had made a workers' compensation claim with another employer. Plaintiff was familiar with the workers' compensation system.
2. Upon coming to work with defendant, during his training, plaintiff was instructed as to how to report a work-related injury, including specifically that he needed to report immediately any accident involving the use of a work saver. *Page 4 
3. On April 30, 2004, plaintiff was working as a material handler for defendant at its plant in McDowell County. As part of his job duties, plaintiff operated a work saver. A work saver is a cart, on which the worker rides, that is used to pick up trucks of products and transport them within the plant.
4. Plaintiff alleges that, on April 30, 2004, he was riding on a work saver when he hit a truck base causing the work saver to stop abruptly. Plaintiff further alleges that when the work saver stopped abruptly he fell backwards across the work saver's battery, which was positioned behind him, and landed on his left side.
5. The work savers in defendant's plant move at about the speed of a person walking. Plaintiff estimated that they moved at about five miles per hour.
6. Plaintiff did not report his alleged accident to any supervisor with defendant nor did he make any written report to defendant.
7. The first time that plaintiff reported his alleged April 30, 2004 work accident to defendant was in a letter to defendant from his then-attorney, dated November 30, 2004, which was sent along with the Form 18, also dated November 30, 2004, seven months after the date of the alleged accident.
8. On his Form 18, dated November 30, 2004, plaintiff, through his then-attorney, alleged that he had suffered whole body trauma when he was "operating a people mover on an unlevel floor and sometimes the machine will stop itself and this time he accelerated into a parked truck base."
9. Plaintiff did not report the alleged accident to any medical provider until he mentioned it to a physical therapist on January 6, 2005, after the filing of his Form 18 through his then-attorney. *Page 5 
10. Plaintiff sought treatment with his family doctor on May 5, 2004 but did not report any specific injury or accident and did not mention any event involving a work saver. Plaintiff was treated for migraine headaches which he described as beginning on May 2, 2004, a day he was not at work.
11. Plaintiff began seeing Dr. Ellis, an ENT doctor, on May 28, 2004, for migraines and sinus problems. Plaintiff did not recount any specific incident to Dr. Ellis. Dr. Ellis eventually performed surgery on plaintiff to correct a deviated septum. Plaintiff did complain of neck pain to Dr. Ellis.
12. Plaintiff began seeing Dr. Menard, a neurologist, on June 9, 2004. Plaintiff complained of having had headaches for many years and he also complained of left arm numbness and neck pain. Plaintiff did not recount any specific incident to Dr. Menard, nor did plaintiff contend that any of the conditions he complained of were work-related. Dr. Menard referred plaintiff for an orthopedic evaluation of his neck symptoms.
13. Plaintiff saw Dr. Moody, an orthopedic surgeon, on September 7, 2004. Plaintiff complained of pain at his cervical/occipital junction with occipital headaches, left leg pain greater than low back pain, and left arm pain with sensory changes. Plaintiff's history, as provided to Dr. Moody on September 7, 2004, shows that plaintiff's symptoms began around the first of May, 2004, "without definite antecedent trauma." Plaintiff did not recount any specific incident to Dr. Moody and never discussed any possible work injury with him.
14. Plaintiff sought chiropractic treatment with Dr. Batchelor on August 11, 2004. On an intake sheet that plaintiff filled out upon initiating treatment with Dr. Batchelor, plaintiff noted that he had already seen other providers for his symptoms and wrote, "I don't know how or *Page 6 
why I am hurting. I don't know what happened to me." Plaintiff made no indication that his conditions were work-related, nor did he recount any specific incident to Dr. Batchelor.
15. On a final report that Dr. Batchelor released to plaintiff's then-attorney in December, 2004 (after the filing of the Form 18), Dr. Batchelor wrote that plaintiff's symptoms began on April 30, 2004 with a work saver accident. However, this information came from plaintiff's then-attorney after the filing of the Form 18, not from plaintiff.
16. Plaintiff first saw Dr. McLean, a physiatrist, on April 18, 2005. Based on the history provided to him by plaintiff, Dr. McLean believes that plaintiff sustained a severe whiplash-type injury to his neck on April 30, 2004. As Dr. McLean testified, the alleged April 30, 2004 accident could have caused the conditions for which he is treating plaintiff.
17. Dr. Levin saw plaintiff once, for an independent medical evaluation on March 21, 2007. Dr. Levin diagnosed degenerative changes in plaintiff cervical and lumbar spine regions, cervicogenic headaches, severe whiplash injury and chronic pain syndrome. Dr. Levin testified that, based on the history provided to him by plaintiff, the alleged April 30, 2004 accident caused plaintiff's conditions. However, Dr. Levin further noted that it was difficult to say what had caused plaintiff's conditions and that he could not explain all of plaintiff's symptoms, that they were multifactorial. Dr. Levin concluded, "I don't know exactly where his pain is originating from."
18. Based on the entirety of Dr. Levin's deposition, his opinion that plaintiff's conditions are causally related to the alleged April 30, 2004 is speculative and is assigned little weight.
19. After plaintiff started missing work in early May of 2004, he was approved for short-term disability benefits provided through a plan fully funded by the employer. After these *Page 7 
benefits were exhausted, plaintiff was approved for long-term disability benefits provided through a plan fully funded by the employer. As of the hearing before the Deputy Commissioner, plaintiff continued to receive weekly long-term disability benefits at the rate of $279.40 per week. Per the provisions of the plan, these benefits are available to employees whose disability is not work-related.
20. Because plaintiff failed to report the alleged April 30, 2004 accident to defendant until seven months after its alleged occurrence, defendant was unable to investigate plaintiff's claim effectively. Defendant was unable to investigate the scene of the accident, the condition of the premises, the condition of the work saver, the condition of the trucks or plaintiff's condition, nor was it able to order the routine post-accident drug screen.
21. Based on the contradictions in the medical records about the mechanism of plaintiff's alleged injuries, his failure to report the alleged accident to any medical provider until over seven months after it allegedly occurred and the inconsistent versions plaintiff has provided as to how the alleged accident occurred, there was a real need for a prompt accident investigation in this claim, and defendant has been genuinely prejudiced by plaintiff's failure to report.
22. Defendant had no actual knowledge of plaintiff's alleged accident or alleged work-related injuries until on or about November 30, 2004, seven months after the alleged accident.
23. Because of plaintiff's failure to report the injury, defendants were not afforded the opportunity to direct medical treatment.
24. Plaintiff has not offered any evidence, beyond his assertion that he was afraid of getting fired, for failing to report the alleged April 30, 2004 accident or his injuries.
25. The Full Commission finds plaintiff not to be credible in this claim. *Page 8 
 ***********
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to carry his burden to establish that he sustained a compensable injury by accident or specific traumatic incident on April 30, 2004. This conclusion is based on several factors: (1) Plaintiff's failure to mention the alleged accident to any of the several medical providers he saw until after he had filed his Form 18 through his then-attorney on November 30, 2004, over seven months after the alleged accident; (2) the lack of clarity, as well as inconsistencies in plaintiff's accounts, as to how the alleged accident occurred; (3) the lack of any clear diagnoses of the conditions from which plaintiff is suffering; and, (4) the lack of any expert testimony effectively establishing causation between the alleged accident and any conditions from which plaintiff suffered thereafter. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. Further, plaintiff's claim is barred by his failure to provide timely written notice of the alleged accident, within 30 days after its alleged occurrence, to defendant. Plaintiff has not shown facts sufficient to support any reasonable excuse for having failed to provide such notice, and defendants have carried their burden to show that they were prejudiced by the lack of timely notice. N.C. Gen. Stat. § 97-22.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. Plaintiff's claim must, under the law, be and hereby is DENIED.
2. Each side shall bear its own costs. As part of their costs, if they have not done so already, defendants shall pay an expert witness fee to each of the following providers, in the amount shown or the amount actually billed, whichever is less: $500.00 to Dr. McLean, and; $420.00 to Dr. Batchelor.
This the 16th day of December 2008.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 1